BRADFORD *vs.* HOWELL.

[CONVERSION—CONSTRUCTION OF DEED.]

1. *Common law; deed of gift, construction of.*—A gift to "O. and her bodily heirs, forever," uncontrolled by any other words, in the conveyance, by the common law, vests an absolute estate in the subject of the gift in O.; and *that*, whether the estate of O. is limited expressly or by implication, to an estate for her own life.

2. *Same; proper party to bring suit for conversion of wife's property.*—Upon the death of O., and the conversion of the property conveyed by said deed of gift, an action for its recovery would have to be brought by the husband of O. in case his marital rights attached, during the coverture; or if not, then by her personal representative, or alienee, if she conveyed her interest, or title to another.

APPEAL from the Circuit Court of Cherokee.
Tried before Hon. W. J. HARRALSON.

THIS was an action of trover, brought by Howell, the appellee, against Bradford, the appellant, for the conversion of certain slaves by appellant, and was commenced on 21st October, 1858. The plaintiff claimed title to an undivided interest in said slaves by virtue of a certain deed of gift of Jane Hamilton to Elizabeth Odell, hereinafter copied, upon the construction of which, the main question in the case depended. The defendant claimed title by purchase from Regnall Odell, the husband of Elizabeth Odell. The following is a copy of the deed referred to:

"SOUTH CAROLINA, } Know all men by these presents, Pickens District. } that I, Jane Hamilton, of the State and district aforesaid, for and in consideration of the natural affection, good will, and love which I have and bear unto my daughter Elizabeth Odell, and her bodily heirs, of Cherokee county, and State of Alabama, and divers other good causes moving me thereto, have given, granted, and conveyed unto the said Elizabeth Odell, and to her bodily heirs, forever, a certain lot of negroes, consisting of three, viz: Eliza, about ten years old; Green, about six years

old ; and Billy, about five years old ; which I convey wholly into her charge and possession, by the delivery of the same into the said Elizabeth Odell, together with all and singular, the rights, &c., to the said negroes belonging, unto the said Elizabeth Odell, and to her bodily heirs, forever ; and I do hereby bind myself, my heirs, &c., firmly by these presents, unto the said Elizabeth Odell, and to her bodily heirs, forever ; and I do warrant and forever defend the right and title of this property, from myself, my heirs, &c. In witness whereof, I have hereunto set my hand and seal, the 7th day of January, A. D. 1843."

At the time of the execution of this deed, Regnall and Elizabeth Odell were husband and wife, and had several children, nearly all of whom were of age. Howell, the appellee, purchased the interest of several of these children of Mrs. Odell, in the slaves conveyed by this deed.

It appears from the record, that Mrs. Odell died prior to the 11th day of September, 1854. Howell having threatened to bring suit against Regnall Odell for his, Howell's, interest in said slaves, they being then in the possession of said Regnall, Howell and said Regnall entered into the following agreement :

"This memorandum of an agreement, entered into between George Howell of the first part, and Regnall Odell of the second part, witnesseth : That whereas, George W. Howell of the first part, has purchased the right, title and interest of the heirs, or donees, in a lot of negroes, consisting of the following: Green, Billy and Eliza, and her child, now in the possession of the party of the second part : Now, the party of the first part agrees that so long as the party of the second part, shall pay the interest on the sum of $450, annually, at the rate of eight per cent., and keep the said negro slaves within Cherokee county, Alabama, unless by the permission of the said party of the first part ; and the said party of the first part agrees not to disturb the possession of the said party of the second part, during his life, to said slaves, upon the above conditions. Signed and sealed, this the 12th day of September, 1855."

Bradford, the appellant, purchased the slaves in controversy from Regnall Odell, in June, 1858.

The first charge given by the court below was as follows: "The deed of Mrs. Hamilton to Mrs. Elizabeth Odell and her bodily heirs, read in. evidence in this cause, conveyed to the said Elizabeth Odell and her bodily heirs an equal interest, share and share alike, to the property conveyed, from the execution and delivery of said deed." The defendant excepted to this charge. There were other charges given and refused by the court. There was a verdict and judgment for the plaintiff. The errors assigned are noticed in the opinion of the court.

STONE, CLOPTON & CLANTON, for appellant.

M. J. TURNLEY, and J. W. RAMSEY, contra.

BYRD, J.—A gift to O. and her bodily heirs forever, uncontrolled by any other words in the conveyance, vests an absolute estate, in the subject of the gift, in O.; and that, whether the estate of O. is limited expressly or by implication, to be one for her own life.—Ewing v. Standifer et al., 18 Ala. 400; Loyd v. Rambo, 35 Ala. 719, and authorities therein cited; Johnson's Adm'r v. Johnson, 32 Ala. 637. Such is the unbending rule of the common law, and we must presume that it was in force in South Carolina where the deed was executed, in the absence of proof to the contrary.—Ellis v. White, 25 Ala. 540; Foster v. Glazener, 27 Ala. 391; ib. 301.

We can see no substantial distinction between a gift to "O. and the heirs of her body," or to her and "her bodily heirs." Both expressions may be controlled, modified or explained, by other expressions in the conveyance.—Powell v. Glenn, 21 Ala. 458; Laudman v. Snodgrass, 26 Ala. 593.

The words "bodily heirs" in the conveyance, are not explained, modified or restricted by any other words or clauses of the conveyance, and we must give them their technical common law interpretation. The words, "which I convey wholly into her charge and possession by the delivery of the same," instead of explaining or restricting the words "bodily heirs," so as to show that the donor intended that they should take as purchasers, are affirmative of the construction put upon them by the common law.

The case of *Perry v. Hubbard*, 30 Ala. 181, relied upon so confidently by the counsel for appellee, we do not think militates against the doctrine announced, nor the application we make of it, to the case in hand. Neither do the other authorities cited by them. We shall not attempt to reconcile any apparent conflict in the authorities upon this branch of the law.

We are satisfied that upon the weight of authority, the deed of conveyance vested an absolute estate in the property conveyed, to Mrs. Odell.

It follows, that upon her death, no one can sustain an action for its conversion but her husband, in case his marital rights attached during the coverture; or, if not, then her personal representative or alienee, if she conveyed her interest or title to another.

There is evidence tending to show that the marital rights of the husband never attached, and also that they did attach to the property conveyed; but by the first charge given to the jury by the court, they were relieved from passing on this question, and upon the present record we cannot properly give any opinion as to the law upon it. But it has heretofore been passed upon by this court.

If the marital rights of the husband never attached to the property, then, upon this record, the suit should have been brought in the name of the personal representative of Mrs. Odell. If his rights did attach, then the question may arise on another trial, whether the agreement of the husband with appellee, conferred any title in connection with such evidence as may be introduced, upon which the action of trover can be maintained.

This view disposes of all the questions raised by the bill of exceptions, which will likely be presented on another trial, in the same form and upon the same facts now before us, and we therefore deem it unnecessary to say anything with reference to them.

For the error in giving the first charge, and the refusal to give those charges which are in conformity to this opinion, the judgment of the court below must be reversed and the cause remanded.

Reversed and remanded.